UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                     Criminal Case No. 18-20626

Antonio King,
                                       Sean F. Cox
    Defendant.                     United States District Court Judge

_____/

**OPINION AND ORDER FINDING THAT DEFENDANT VIOLATED THE CONDITIONS OF HIS SUPERVISED RELEASE AND DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER**

The Court held a supervised release violation hearing on October 26, 2018 and October 31, 2018. For the reasons below, the Court concludes that the Government has established, by a preponderance of the evidence, that Defendant committed a Grade A violation, and three Grade C violations.

## BACKGROUND

Defendant previously pleaded guilty to felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On March 23, 2015, the United States District Court for the Northern District of Indiana sentenced Defendant to 21 months in prison, followed by three years of supervised release. (ECF No. 1). The court imposed thirteen conditions of supervision. (ECF No. 1-1, PageID.4-5).

Defendant's supervised release began on March 11, 2016. This Court accepted jurisdiction over Defendant's supervised release on September 26, 2018. (ECF No. 2). Shortly thereafter, Defendant's probation officer filed a Petition for Warrant, alleging that Defendant had violated

several conditions of his supervised release. The Court issued the warrant on October 1, 2018. (ECF No. 3).

The Petition alleges the following violations of Defendant's supervised release:

- (1) "Violation of Mandatory Condition: The Defendant shall not commit another federal, state or local crime," ("the First Violation"),

- (2) "Violation of Standard Condition No. 3: The Defendant shall refrain from any unlawful use of controlled substances, including marijuana, and shall submit to one drug test within 15 days of the beginning of supervision and at least two periodic tests after that for use of a controlled substance," ("the Second Violation"),

- (3) "Violation of Standard Condition No. 5: The Defendant shall report to the probation officer in the manner and as frequently as court or the probation officer directs, and shall notify the probation officer within 48 hours of any change in residence or employment and within 72 hours of being arrested or questioned by a police officer," ("the Third Violation"),

- (4) "Violation of Special Condition No. 10: The Defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon," ("the Fourth Violation").

The Court held an evidentiary hearing on the alleged violations on October 26, 2018 and October 31, 2018. At the beginning of the hearing, Defendant pleaded guilty to the Second Violation. The Government then presented one witness, Michigan State Police Sergeant Phillip Duplessis. The Government also introduced twenty-six exhibits. The Defendant presented one

witness, Wayne State University Police Detective Patrick Cecile, and introduced three exhibits.

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for the Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

To begin, the Court finds the testimony of the Government's witness to be credible and reliable. Sergeant Duplessis's testimony, the foundation for these findings of fact, was consistent and supported by corroborating evidence.

Turning to the facts at hand, the alleged violations originate in an investigation by the Detroit Homicide Task Force, a multi-jurisdictional unit embedded in the Detroit Police Department. On August 20, 2018, roughly six members of the Task Force, supervised by Sergeant Duplessis, arrived at 14434 Elmdale Street ("the Elmdale house"), to execute a search warrant for surveillance equipment that might have captured images related to a nearby murder. The officers had previously attempted to execute the warrant, but had been unable to contact any occupants. The officers "stacked" by the front door, and otherwise prepared to make a forceful entry. However, force proved unnecessary when, after the officers announced their presence and purpose, the front door opened and Defendant and two other men came out with their hands raised. Defendant was shirtless and his companions were fully clothed. As the men left the house, Sergeant Duplessis noticed a strong odor of marijuana.

The officers asked, "Whose house is this?" and Defendant replied, "It's my house." The

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

officers then secured the men, searched them for weapons, and searched police databases to see if any of them had outstanding warrants. The men were compliant and had no contraband on their persons. The database search showed that Defendant was on federal supervised release. The officers also conducted a security sweep of the house, to ensure that nobody else was inside.

As the officers were conducting the security sweep and executing the surveillance-equipment search warrant, contraband (marijuana) was in plain view throughout the house. After an officer found a gun in the south bedroom, Sergeant Duplessis instructed all of the officers to leave the house until he could get a second search warrant for drugs and guns. Once this second warrant was received, the officers searched the house and found the following contraband:

- loose marijuana, on the dining room table;
- a rolled blunt marijuana cigar, on the dining room table;
- two baggies of marijuana, hidden in a speaker in the dining room;
- three counterfeit $100 bills, hidden in the same speaker in the dining room;
- a digital scale, coated in marijuana residue, in the kitchen;
- small, empty plastic baggies, near the digital scale;
- live .45 caliber semiautomatic ammunition, in the kitchen;
- 12 gauge shotgun shells, in the kitchen;
- a .38 caliber semiautomatic pistol, in a varsity jacket, in the south bedroom;[2]
- a magazine for a .45 caliber pistol, in the varsity jacket, in the south bedroom;
- a . 45 caliber Glock semiautomatic pistol, with an extended 30-round magazine, in

---

[2] The police later confirmed that the .38 caliber gun had been reported stolen.

the south bedroom's closet;[3]

- A few hundred grams of marijuana, in a backpack, in the south bedroom; and

- three baggies of marijuana, sitting underneath an end table in the foyer.

The house had two bedrooms. The east bedroom was nearly empty, with only a small amount of clutter on the floor and a television in the corner. The south bedroom was fully furnished and its closet contained only Defendant's clothes and the contraband identified above. In the south bedroom, the officers also found the name "Dino" embroidered on a banner and a pair of slippers. Defendant admitted that "Dino" is his nickname.

At some point, Defendant asked Sergeant Deplessis to get his cell phone so that he could call his wife. As requested, Sergeant Deplessis retrieved Defendant's cell phone from a charger in the south bedroom. Defendant had been sleeping in the south bedroom before the police arrived.

The police also found several pieces of evidence that showed that Defendant resided at the house, including a utility bill from DTE Energy and a prescription pill bottle. Both of these items were in Defendant's name.

Defendant was arrested for, and charged with, possession of marijuana with intent to deliver ("PWID"), felon in possession of a firearm, and possession of a stolen firearm. These charges are currently pending in state court.

## CONCLUSIONS OF LAW

Under 18 U.S.C § 3583(e)(3), a district court may revoke a term of supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release." There are three grades of probation and supervised release violations:

---

[3] The police later confirmed that the Glock was unregistered and records indicate that it once belonged to the St. Clair County Sheriff's Department.

(1) Grade A Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2) Grade B Violations--conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3) Grade C Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.1(a).

## I. First Violation: Defendant Committed Another Federal, State, or Local Crime

The Government alleges that Defendant violated his supervised release by committing another federal, state, or local crime. "A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." § 7B1.1, cmt. 1. The Court determines the grade of the violation "based on the defendant's actual conduct." *Id*. Here, the Government alleges three new crimes: (1) PWID, (2) felon in possession of a firearm, and (3) possession of a stolen firearm. The Court shall address each in turn.

### a. PWID

The first new crime alleged by the government is possession of marijuana with intent to distribute. 21 U.S.C. § 841(a)(1) provides that it is unlawful for any person knowingly or intentionally to "possess with intent to...distribute...a controlled substance." To establish a violation of § 841(a)(1), the Government must prove the following elements: "(1) knowing (2) possession of a controlled substance (3) with intent to distribute." *United States v. Mackey*, 265 F.3d 457, 460 (6th. Cir. 2001).

"A conviction for possessing a controlled substance with intent to distribute can be based upon a showing of actual or constructive possession." *United States v. Hill*, 142 F.3d 305, 312 (6th Cir.1998). "Constructive possession requires evidence supporting the conclusion that the defendant had the ability to exercise knowing dominion and control over the items in question." *United States v. Wettstain*, 618 F.3d 577, 586 (6th Cir.2010) (internal quotation marks omitted). Proof that one knowingly and intentionally has dominion over the *premises* where the contraband is found "is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998).

The intent element may be inferred from a variety of factors, including the possession of quantities of drugs too large for personal use, *United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir.1995), the presence of drug distribution paraphernalia, such as scales and packaging materials, and the concurrent seizure of large amounts of currency. *Hill*, 142 F.3d at 312 (6th Cir.1998).

The Government has proven, by a preponderance of the evidence, that Defendant knowingly possessed a controlled substance with intent to distribute. As to the possession element, Defendant owned/had possession of the premises where the officers found the marijuana. Although Defendant argues that he leased the property to Eric Fowler, the evidence clearly shows that he was the person who actually resided at the Elmdale house.[4] There was only one inhabited bedroom, which was decorated with Defendant's nickname and contained his phone and clothing. Before the police

---

[4]To believe Defendant's story, the Court would have to conclude that a landlord went to a rented property when the tenant was not there, invited his friends over, left them in the dining room (at which point they started smoking marijuana), went to his tenant's bedroom, plugged in his phone, undressed, and took a nap in his tenant's bed. This series of events is improbable. Defendant's story is further undercut by the fact that Defendant did not mention his alleged tenant until the day of the hearing.

7

arrived, Defendant was sleeping in that bedroom. The house's utilities were in his name. His prescription medicine was there. Based on all of this evidence, the Court finds that Defendant resided at the Elmdale house. Thus, the Government has proven by a preponderance of the evidence that Defendant knowingly had dominion over the premises and, therefore, possessed the marijuana in his house.

As to the intent requirements, police officers found loose marijuana, bagged marijuana, empty baggies, a large amount of cash, and a digital scale with marijuana residue on it. While it is true, as Defendant argued at the hearing, that the bagged marijuana is as consistent with a recent purchase as it is with a future sale, this argument does not explain the marijuana-coated scale, loose marijuana, empty baggies, or cash. All of this paraphernalia points to a distribution and selling operation. *See Hill*, 142 F.3d at 312. Thus, the Government has proven by a preponderance of the evidence that Defendant knowingly possessed the marijuana with intent to distribute.

For these reasons, the Court concludes that the Government has satisfied its burden. The Court finds, by a preponderance of the evidence, that Defendant committed the new crime of possession with intent to distribute a controlled substance. Because this conduct is a controlled substance offense, it is a Grade A violation.

  b. **Felon in Possession of a Firearm**

Next, the Government alleges that Defendant violated his supervised release by possessing a firearm and ammunition. Because Defendant is a felon, it is a crime under federal and state law for him to possess any firearm or ammunition. 18 U.S.C. § 922(g)(1); M.C.L. § 750.224f. Possession of a firearm by a felon is a Grade B violation. *See* § 7B1.1, cmt. 5; *see also United States v. Webb*, 559 Fed. App'x. 704, 706 (10th Cir. 2014) ("Defendant's 2012 felon-in-possession

conviction under § 922(g)(1) represents a Grade B violation.").

The Government has proven, by a preponderance of the evidence, that Defendant possessed firearms and ammunition. As explained above, proof that one knowingly and intentionally has dominion over the *premises* where the contraband is found "is sufficient to establish constructive possession," *Kincaide*, 145 F.3d at 78, and the Government has proven that Defendant exercised knowing dominion over the house where the guns and ammunition were found. Further, the officers found the guns and some of the ammunition in the closet of the house's only inhabited bedroom, where Defendant slept. Indeed, one of the guns was in the pocket of a coat that belonged to Defendant. This evidence is sufficient to show that Defendant possessed a firearm and ammunition in violation of his supervised release. And because Defendant is a felon, this conduct is a Grade B violation.

    **c.**    **Possession of a Stolen Weapon**

Finally, the Government alleges that Defendant violated his supervised release by committing the new crime of possession of a stolen weapon. 18 U.S.C. § 922(i) provides that "[i]t shall be unlawful for any person to...possess...any stolen firearm...which has been shipped or transported in interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen." As explained above, Defendant had possession of the .38 caliber weapon, which was found in a pocket of one of his coats, in his closet. Sergeant Duplessis also testified that this gun had been reported stolen. This evidence is sufficient to show that Defendant possessed a stolen firearm. This conduct is a Grade B violation. *See* 18 U.S.C. § 924(a)(2) (stating that a person who violates § 922(i) shall be imprisoned for not more than 10 years) and U.S.S.G. § 7B1.1(a) (stating that a Grade B violation

is conduct constituting a criminal offense that is punishable by a term of imprisonment exceeding one year).

### d. Conclusion for the First Violation

The Court finds that Defendant committed three new crimes. When a violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade. U.S.S.G. § 7B1.1(b). Because the Court found that Defendant committed a controlled substance offense, the First Violation is a Grade A violation.

## II. Second Violation: Defendant Pleaded Guilty to Unlawful Use of Marijuana

At the October 26, 2018 evidentiary hearing, Defendant pleaded guilty to the second violation, the unlawful use of a controlled substance, including marijuana. The Court accepted his plea. This is a Grade C violation of his supervised release.

## III. Third Violation: Defendant Did Not Report the Elmdale Address

The Government alleges that Defendant violated Standard Condition No. 5—which requires Defendant to notify his probation officer of any change in residence—by failing to report his residence at the Elmdale house. As explained above, the Court finds that Defendant resided at the Elmdale house. Because he failed to report this address to his probation officer, he has committed a Grade C violation of his supervised release.

## IV. Fourth Violation: Defendant Possessed a Firearm and Ammunition

The Government alleges that Defendant violated Standard Condition No. 10, which prohibited Defendant from possessing a firearm or ammunition. For the reasons stated above, the Court finds that Defendant possessed firearms and ammunition. This conduct is a Grade C violation of his supervised release.

### V. Defendant's Motion for Revocation of Detention Order is Denied as Moot

Defendant filed a motion to revoke his detention order, which detained him pending his supervised release hearing. The Court heard oral arguments on this motion on October 31, 2018. Because the Court has conducted the hearing and determined that Defendant committed several supervised release violations, including a Grade A violation, the Court will deny this motion as moot.

### CONCLUSION

For the reasons above, the Court finds that the Government has established, by a preponderance of the evidence, that Defendant committed several violations of his supervised release, including one Grade A violation. Further, the Court DENIES Defendant's motion for revocation of his detention order, as moot.

**The parties shall appear for sentencing in this matter on December 12, 2018 at 3:30 p.m.** If either party wishes to submit a sentencing memorandum, that memorandum must be submitted to the Court, in writing, by December 5, 2018.

**IT IS SO ORDERED.**

    s/Sean F. Cox
    Sean F. Cox
    United States District Judge

Dated: November 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 19, 2018, by electronic and/or ordinary mail.

    s/Jennifer McCoy
    Case Manager